NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANET HOBSON, *individually and on behalf of all others similarly situated*,<br><br>                                  Plaintiff,<br><br>v.<br><br>HARTFORD INSURANCE COMPANY OF THE MIDWEST,<br><br>                                  Defendant. | Case No. 21cv20696 (EP) (ESK)<br><br>**OPINION** |

**PADIN, District Judge.**

Defendant Hartford Insurance Company of the Midwest's ("Hartford Insurance") moves to dismiss Plaintiff Janet Hobson's ("Hobson") Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), or, alternatively, to stay this matter pending a decision of the New Jersey Department of Banking and Insurance ("DOBI"). The Court decides this matter on the papers pursuant to Fed. R. Civ. P. 78 and L.Civ.R.78.1(b). For the reasons below, Hartford Insurance's motion is GRANTED in part and DENIED in part. Hobson's Amended Complaint is DISMISSED in part WITHOUT PREJUDICE. Defendant's request to stay this matter is DENIED.

**I.      BACKGROUND[1]**

Hobson filed an Amended Complaint,[2] on behalf of a putative class, in the New Jersey District Court on January 4, 2022, against Hartford Insurance alleging: a violation of the New

---

[1] The following facts drawn from Hobson's Amended Complaint are taken as true for purposes of this motion.
[2] Hobson filed an initial complaint on December 23, 2021, but due to apparent errors in that complaint, the Court directed Hobson to file an amended complaint. D.E. 1; D.E. 2.

Jersey Consumer Fraud Act ("NJCFA"); breach of contract; breach of the covenant of good faith and fair dealing; and declaratory judgment stating the parties' rights and liabilities under Hobson's vehicle insurance policy with Hartford Insurance ("Policy") and New Jersey law. *See* D.E. 3, "Am. Compl." ¶¶ 36-73.

On or around July 22, 2019, Hobson was in an automobile accident while driving her 2016 Mazda6 i Touring 4-door sedan ("Hobson's Vehicle"). Am. Compl. ¶ 24. After Hobson's Vehicle was deemed a total loss, Hobson submitted a vehicle insurance claim to Hartford Insurance under her Policy. *Id.* The Policy limited Hartford Insurance's liability to the lesser of the: (1) actual cash value ("ACV") of the damaged property; or (2) amount necessary to repair or replace the property with other similar property. Am. Compl., D.E. 3-1 at 15.[3] Additionally, "[a]n adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss." *Id.*

Hartford Insurance calculated the ACV of Hobson's Vehicle, and then based on that calculation offered and paid Hobson a total cash settlement amount of $16,032.81. Am. Compl. ¶¶ 26-27. The cash settlement amount was based upon a valuation report Hartford Insurance obtained from Mitchell ("Valuation Report"), a third-party provider of valuation reports, on or around July 30, 2019. *Id.* ¶ 26; Am. Compl., D.E. 3-2 at 1, "Valuation Report". Mitchell applies a five-step valuation methodology to determine a vehicle's fair market value ("FMV")[4]: "Step 1 – Locate Comparable Vehicles[;]" "Step 2 – Adjust Comparable Vehicles[;]" "Step 3 – Calculate

---

[3] N.J.A.C. § 11:3-10.2 defines ACV as "the lesser of the amounts" that "can reasonably be expected to:" (1) "[r]epair the motor vehicle to its condition immediately prior to the loss;" or (2) "[r]eplace the motor vehicle with a substantially similar vehicle."
[4] Market value, Fair Market Value, and Actual Cash Value are used interchangeably in this context. *See generally* N.J.A.C. § 11:3-10.4(a)(3).

2

Base Vehicle Value[;]" "Step 4 – Calculate Loss Vehicle Adjustments[;]" and "Step 5 – Calculate the Market Value." Valuation Report at 16.

For Hobson's Vehicle, Michell's five-step valuation methodology was applied as follows: Step 1 – 20 "comparable" vehicles were located, *see* Valuation Report at 4; Step 2 – an equipment adjustment, mileage adjustment, and projected sold adjustment ("PSA") were applied to the 20 comparable vehicles' values, *see id.* at 6-15; Step 3 – a base value of $15,624.26 was determined by averaging the adjusted prices of the 20 comparable vehicles, *see id.* at 4; Step 4 – the Loss Vehicle was adjusted downward by $202.63 due to its condition, *see id.* at 5; and Step 5 – the Loss Vehicle's market value was calculated to be $15,421.63, *see id.* at 1. After applying a $1,021.68 adjustment for taxes and a $500 adjustment for Plaintiff's deductible, Defendant determined the settlement value of Plaintiff's Loss Vehicle was $15,943.31. *Id.* Plaintiff accepted Defendant's cash settlement offer.[5]

Here, Hobson's claims arise out of the PSA applied to comparable vehicles in Step 2 of the Valuation Report. *See* Am. Compl. ¶¶ 12-23, 36-73. The Valuation Report defines PSA as "an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." Valuation Report at 16. In other words, Mitchell assumed that most car buyers pay less than the sticker price. The PSA applies only to comparable vehicles that have a "list price," but no "sold price," available. *See id*. In the valuation of Hobson's Vehicle, Hobson alleges that applying the PSA to comparable vehicles resulted in a decrease of between three to five percent in the FMV of 19 vehicles. *See* Am. Compl. ¶¶ 17-21, 27. Hobson does not allege that Hartford Insurance's general use of the valuation methodology, provided by Mitchell and approved by the

---

[5] The Valuation Report provides that the cash settlement value of Hobson's Vehicle was $15,943.31, *see* Valuation Report at 1, but Hobson's Amended Complaint states that Hartford Insurance valued Hobson's Vehicle at $16,032.81 and paid her that amount. Am. Compl. ¶ 27. The discrepancy does not affect the analysis of Hobson's claims.

3

DOBI, is inappropriate. Instead, Hobson alleges that Hartford Insurance's instruction to Mitchell to apply an "arbitrary" and "capricious" PSA to comparable vehicles at Step 2 of Mitchell's valuation methodology is inappropriate and contravenes Hartford Insurance's obligation to pay the ACV of Hobson's Vehicle under the Policy. *See* Am. Compl. ¶ 3. To highlight that her issue is specifically with Hartford Insurance's instruction to Mitchell at Step 2, Hobson adds that Hartford Insurance does not always instruct Mitchell to apply the PSA. *See* Opp'n at 18 (explaining that Hartford Insurance uses Mitchell's valuation methodology in California but does not apply the PSA there).

## II.  STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "[f]ailure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under this standard, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Courts are not to give credit to a complaint's "bald assertions" or "legal conclusions." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997).

Independent of the applicable pleading standard under Fed. R. Civ. P. 8(a), Fed. R. Civ. P. 9(b) "imposes a heightened pleading requirement of factual particularity with respect to allegations

of fraud." *In re Rockefeller Ctr. Props. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Satisfying this heightened pleading standard requires that a plaintiff state the circumstances of his alleged cause of action with "sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004)). At a minimum, this requires that the plaintiff allege the "'who, what, when, where and how'" of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 76-77 (3d Cir. 2006) (quoting *In re Rockefeller*, 311 F.3d at 216).

III.    ANALYSIS

A.      **Hobson Fails to State a Claim Under the New Jersey Consumer Fraud Act**

Hobson brings a claim under the NJCFA, N.J. Stat. Ann. § 56:8-1, *et seq*. Am. Compl. ¶¶ 36-52. The NJCFA prohibits:

> [A]ny unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.]

N.J. Stat. Ann. § 56:8-2. The Third Circuit has held that the NJCFA can be broad enough to cover, not only fraud in the initial "sale or marketing" of insurance policies, but also fraud in the "subsequent performance" of insurance policies; for example, where the insurer stops fulfilling its obligations. *Weiss v. First Unum Life Insurance Co.*, 482 F.3d 254, 256, 265 (3d Cir. 2007). But the NJCFA does not cover all situations where a plaintiff alleges fraud in the "subsequent performance" of insurance policies. *See Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 168 (3d Cir. 1998) ("The mere denial of insurance benefits to which the plaintiffs believe[ ] they [are]

5

entitled does not comprise an unconscionable commercial practice."); *see also Myska v. New Jersey Mfrs. Ins. Co.*, 440 N.J. Super. 458, 114 A.3d 761 (App. Div. 2015) (finding that while the NJCFA may apply to allegations of a fraudulent *discontinuation* of previously authorized insurance benefits, it does not apply to allegations of a *denial* of insurance benefits) (emphasis added); *Pierzga v. Ohio Cas. Group of Ins. Cos.*, 208 N.J.Super. 40, 47, 504 A.2d 1200 (App. Div. 1986), ("[T]he insurance industry is already heavily regulated by the Department of Insurance[, making] exclusive regulatory jurisdiction of insurance companies, at least with respect to the payment of claims, ... within the Department of Insurance."), *certif. denied*, 104 N.J. 399, 517 A.2d 402 (N.J. 1986).

To state a claim under NJCFA, a plaintiff must allege: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the two." *Hassler v. Sovereign Bank*, 374 Fed. App'x 341, 343 (3d Cir. 2010) (citations and quotation marks omitted).

Hobson alleges that "[Hartford Insurance] violated the [NJCFA] by misrepresenting and failing to disclose material facts regarding [Hartford Insurance's] application of the PSA to artificially lower the amount of its ACV payments to insureds[.]" Opp'n at 8; Am. Compl. ¶¶ 36-52. Hartford Insurance contends that it did not violate the NJCFA because: (1) the claim is subject to the DOBI's exclusive jurisdiction; (2) Hartford Insurance did not commit unlawful conduct; (3) Hartford Insurance did not engage in any misrepresentations; and (4) Hartford Insurance did not violate any regulations. *See* Mot. at 10-11; Reply at 2-7.

Hobson alleges that had Hartford Insurance disclosed its use of the PSA at the time Hobson purchased the Policy, she would not have purchased the insurance coverage from Hartford Insurance or would not have paid the same price such coverage. *See* Am. Compl. ¶ 50. Hobson alleges that it follows then that Hartford Insurance committed unlawful conduct, engaged in

6

misrepresentations, or violated any regulations "in connection with the sale or advertisement" of the Policy by not disclosing the PSA when she purchased the Policy. *See id.* But Hobson's allegations appear to really be based on Hartford Insurance's "subsequent performance" of its obligation to pay the ACV of Hobson's Vehicle under the Policy, not the sale of the Policy, particularly because Hobson makes no allegation that ACV (or any adjustments that would be applied thereto) was even discussed when she purchased the Policy. Instead, Hobson's allegation that Hartford Insurance engaged in a "deceptive, fraudulent, and unfair scheme" to "systematically undervalue[] total-loss vehicles in order to arbitrarily reduce the ultimate payment to insureds who make total loss claims[]" by applying the PSA to the ACV calculus appears to be about Hartford Insurance's performance of its obligation under already-existing insurance policies. *See* Am. Compl. ¶¶ 1, 36-52. The Court finds that Hobson's allegations are based on Hartford Insurance's "subsequent performance" and not the "sale or advertisement" of insurance policies.

Because the scope of the NJCFA is not all-encompassing in the context of insurance policies where an insurer's "subsequent performance" is questioned, the Court looks to guiding decisions to determine whether Hobson's allegations fall within the NJCFA's scope. Hartford Insurance cites to *Myska*, for the proposition that Hobson's claim falls outside of the scope of the NJCFA because it does not cover an insurance company's refusal to pay benefits. Mot. at 18. In *Alpizar-Fallas v. Favero*, 908 F.3d 910, 917-18 (3d Cir. 2018) (internal quotation marks omitted), the Third Circuit explained the decision in *Myska* as follows: "the defendant insurance company had denied the plaintiffs' claims for payment for diminution of value of their cars after they had been damaged in accidents[;]" "the essence of plaintiffs' causes of action involved whether they filed and supported a claim for a specified amount of benefits under their respective policies[;]" and because the NJCFA "was not intended as a vehicle to recover damages for an insurance

7

company's refusal to pay benefits[,]" then the plaintiffs' claims were not cognizable under the NJCFA. In contrast, in *Alpizar-Fallas*, where the Third Circuit found the subsequent performance of an insurer to fall within the NJCFA's scope, the Third Circuit explained, *inter alia*, that: the plaintiff "relied on express false representations [made by the insurance] adjuster[;]" the insurance adjuster "falsely represented the nature of the documents [the plaintiff] signed;" the plaintiff "reasonably relied on the materially false representations [made by the insurance company and insurance adjuster[.]" 908 F.3d at 917-18.

Hobson's claim is like the one in *Myska* and unlike the claim in *Alpizar-Fallas*. Here, Hobson's allegations boil down to whether Hobson received the insurance benefit she was entitled to under the Policy: the ACV of her vehicle when it was deemed a total loss. Unlike in *Alpizar-Fallas*, Hobson makes no allegations that Hartford Insurance made express false representations about the PSA nor does she make any allegations that Hartford Insurance represented the ACV calculus differently at any point in time. Like in *Myska*, Hobson alleges that she was entitled to a different payment from her insurance company than what she received. Therefore, like in *Myska*, Hobson's claim falls outside of the NJCFA's scope.

Hobson does not sufficiently state a claim falling within the NJCFA's scope, regardless of whether the Court applies the standard pleading requirement under Fed. R. Civ. P. 8(a) or the heightened standard for fraud claims under Fed. R. Civ. P. 9(b). Accordingly, the Court dismisses Hobson's claim under the NJCFA.

B.     **Hobson States a Claim for Breach of Contract**

Hobson also brings a common law breach of contract claim. Am. Compl. ¶¶ 53-62. To plead a breach of contract under New Jersey law, a plaintiff must allege: "(1) there was a contract; (2) that contract was breached; (3) the breach resulted in damages; and (4) the person suing for

8

breach performed its own contractual duties." *Exclusive Auto Collision Ctr. v. Geico Ins. Co.*, Civ. No. 17-cv-13166, 2018 WL 5033753, at *5 (D.N.J. Oct. 16, 2013) (citing *Inventory Recovery Corp. v. Gabriel*, Civ. No. 11-cv-01604, 2012 WL 2990693, at *4 (D.N.J. July 20, 2012) (citation omitted)). At issue here is whether Hartford Insurance breached the contract (the Policy) by applying the PSA in its ACV calculus. Am. Compl. ¶¶ 58-29; Mot. at 15.

Hobson claims that Hartford Insurance breached by "purport[ing] to pay [the insureds] the ACV of their totaled vehicles[,]" when, in reality, Hartford Insurance "failed to pay the ACV [of their vehicles] because [it] applied an arbitrary and capricious 'projected sold adjustment' to comparable vehicles in order to reduce their market value and, as a result, Hartford Insurance's ACV payment to insureds." *See id.* ¶¶ 58-59. "Thus, Hartford [Insurance] failed to pay Hobson and each of the other Class members the promised ACV of their total loss vehicles[.]" *Id.* ¶ 60. To support this, Hobson alleges that the PSA "is arbitrarily applied as a universal percentage reduction to any vehicle in a given price range[,]" rather than being based on "any tangible features of the available vehicle which may relate to consumer negotiations[.]" *Id.* ¶ 17. As an example, Hobson adds:

> if a car is listed for sale at $10,000, the vehicle could be reduced by 7%. Now if an identical vehicle of the same make, model year and trim is listed at $15,000, the vehicle might be reduced by 10%, regardless of the fact that both vehicles shared the same make, model, year, and features. There is no rational explanation for why the two identical vehicles would be subject to such varied reductions in their selling price.

*Id.*

In *Smith v. Southern Farm Bureau Cas. Ins. Co.*, 18 F.4th 976, 980 (8th Cir. 2021), the Eighth Circuit considered an identical breach of contract claim and held that the plaintiff had sufficiently pled a breach of contract claim. The plaintiff in *Smith*, like Hobson, claimed that the defendant insurance company had an obligation to pay the ACV of his total loss vehicle, but

9

because the defendant insurance company arbitrarily applied the PSA to the ACV calculus, the plaintiff received an artificially low payment for his total loss vehicle.  *Id.*  Notably, the level of detail Hobson provided in the Amended Complaint is equivalent to the level of detail the plaintiff in *Smith* provided in his complaint.

If Hobson's allegations that Hartford Insurance applied the PSA to the ACV calculus in this arbitrary manner are true, then Hartford Insurance did not pay the ACV of Hobson's Vehicle. Instead, Hartford Insurance paid an artificially lower value, in breach of its contractual duty. Accordingly, Hobson plausibly states a claim for breach of contract.

**C.     Hobson Fails to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing**

Hobson also brings a common law breach of the covenant of good faith and fair dealing claim.  Am. Compl. ¶¶ 63-68.  Every contract contains an implied covenant of good faith and fair dealing.  *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, 516 F. Supp. 3d 407, 417 (D.N.J. 2021). To plead a breach of this covenant under New Jersey law, a plaintiff must allege: "(1) the defendant act[ed] in bad faith or with a malicious motive, (2) to deny the plaintiff some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract." *Veyhl v. State Farm Fire & Cas. Co.*, Civ. No. 21-cv-10112, 2021 WL 6062304, at *5 (D.N.J. Dec. 22, 2021) (citing *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 463 (D.N.J. 2020) (internal citations and quotations omitted)).  A plaintiff is entitled to relief "if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose" or "if it relies to its detriment on a defendant's intentional misleading assertions."  *Brunswick Hills Racquet Club., Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 226, 864 A.2d 387 (2005).

To establish bad faith, a plaintiff must demonstrate "the absence of a reasonable basis for denying benefits of the policy[,]" *id.* (citing *Tarsio v. Provident Ins. Co.*, 108 F. Supp. 2d 397, 200 (D.N.J. 2000) (internal quotation omitted)), and then that the "defendant knew or recklessly disregarded the lack of a reasonable basis for denying the claim." *Id.* (citing *Tarsio v. Provident Ins. Co.*, 105 F. Supp. 2d at 400-01). This standard requires a plaintiff to do more than merely "allege[] that [insurer's] denial of coverage inferentially establishes bad faith" because this "relies on the very speculation that *Twombly* forbids." *Raritan Bay Fed. Credit Union v. CUMIS Ins. Soc'y, Inc.*, Civ. No. 9-cv-1512, 2009 WL 2223049, at *3 (D.N.J. July 23, 2009). "While 'the lack of a reasonable basis may be inferred and imputed to an insurance company,' there must be allegations of reckless indifference to facts or to proofs submitted by the insured." *Raritan Bay Fed. Credit Union v. CUMIS Ins. Soc'y, Inc.*, 2009 QL 2223049, at *9 (quoting *Picket v. Lloyd's*, 131 N.J. 457, 473, 621 A.2d 445 (N.J. 1993)).

According to the Amended Complaint, the basis of Hartford Insurance's breach of the covenant of good faith and fair dealing is how Hartford Insurance exercised its "discretion to perform its obligations under the contract, including its obligation to determine the ACV of an insured's total loss vehicle." Am. Compl ¶ 66. Hartford Insurance argues that Hobson's breach of the covenant of good faith and fair dealing claim should be dismissed because it duplicates the underlying conduct alleged in Hobson's breach of contract claim, specifically Hartford Insurance's "alleged failure to provide [Hobson] with the actual cash value of her vehicle[.]" *See* Mot. at 16.

For the Court to find that Hobson plausibly alleged a breach of the covenant of good faith and fair dealing, it would need to infer, at a minimum, reckless indifference from the fact that Hartford Insurance applied PSAs in its ACV calculus. However, the Court declines to make such an inference because Hobson does not provide sufficient factual allegations suggesting an absence

of a reasonable basis on the part of Hartford Insurance for applying PSAs. Consequently, Hobson has not plausibly pled a claim for a breach of the covenant of good faith and fair dealing.

Hobson's claim also fails for a second reason. As Hartford Insurance points out, Hobson's breach of the covenant of good faith and fair dealing is duplicative of her breach of contract claim. Specifically, both claims can be boiled down to the same allegation: Hartford Insurance underpaid total loss vehicle claims by applying an "arbitrary" PSA. *See* Am. Compl. ¶¶ 59, 66; *see also Lewis v. Gov't Emples. Ins. Co.*, 2019, Civ. No. 18-cv-05111, WL 1198910, at *8 (D.N.J. May 14, 2019) (finding that a claim for breach of implied covenant of good faith and fair dealing must fail where it is duplicative of a claim for breach of contract because both were rooted in the same allegations).

Accordingly, the Court dismisses this claim.

D.  **Hobson's Declaratory Judgment Claim is Improper**

Hobson pleads a standalone claim for declaratory judgment, specifically asking the Court to weigh in on the parties' rights and liabilities under the Policy and New Jersey law. Am. Compl. ¶¶ 69-73. In federal court, the Declaratory Judgment Act, 28 U.S.C. § 2201 applies, *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996), but it is not a standalone source of rights. *See Kabbaj v. Google Inc.*, 592 F. App'x 74, 74 n.2 (3d Cir. 2015); *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 628 (3d Cir. 2013); *In re: Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, 172 F. Supp. 3d 724, 740 (D.N.J. 2016). Instead, the Act is "a procedural vehicle for litigants to seek a declaration of their rights under some other law." *Medwell, LLC v. Cigna Corp.*, Civ. No. 20-cv-10627, 2021 WL 2010582, at *6 (D.N.J. May 19, 2021) (citations omitted). Therefore, Hobson's claim for declaratory judgment requires dismissal as a standalone claim, but

Hobson may seek a declaratory judgment as a remedy in connection with one or more of its substantive claims.

E.  **Hartford Insurance's Request for a Stay is Denied**

Hartford Insurance requests, in the alternative, a stay under the primary jurisdiction doctrine pending the DOBI's review of Hobson's claims. *See* Mot. at 20-23. The primary jurisdiction doctrine provides that "when enforcement of a claim requires resolution of an issue within the special competence of an administrative agency, a court may defer to a decision of that agency." *Bloom v. AARP, Inc.*, Civ. No. 18-cv-2788, 2018 WL 0152230, at *10 (D.N.J. Nov. 30, 2018) (quoting *Campione v. Adamar of N.J., Inc.*, 155 N.J. 245, 263-64, 714 A.2d 299 (N.J. 1998)). But, "[w]hen the legal rights of parties are clear, it is unjust and unfair to burden them with an administrative proceeding to vindicate their rights." *Id.* (quoting *Magic Petroleum Corp. v. Exxon Mobil Corp.*, 218 N.J. 390, 406, 95 A.3d 175 (N.J. 2014)). To determine whether abstention on the basis of the primary jurisdiction doctrine is appropriate, courts consider a four-factor test:

> (1) whether the matter at issue is within the conventional experience of judges; (2) whether the matter is peculiarly within an agency's discretion, or requires agency expertise; (3) whether inconsistent rulings might pose a danger of disrupting the statutory scheme; and (4) whether prior application has been made to the agency.

*Id.* (quoting *Magic Petroleum Corp. v. Exxon Mobil Corp.*, 218 N.J. at 407).

Hartford Insurance argues that a stay is appropriate because the DOBI has expressly permitted the use of Mitchell's computerized database in the ACV calculus of total loss vehicles and should, therefore, be the agency to review whether the use of PSAs is appropriate. *See id.* at 20. Hobson argues that a stay is inappropriate because the claims raised are within the realm of matters that courts routinely address, specifically "the interpretation of an insurance contract or

allegations of misleading consumer conduct[,]" and do not involve complex questions. *See* Opp'n at 23.

In *Mian v. Progressive County Mutual Insurance Co.*, Civ. No. 20-cv-00536, 2020 WL 9938283, at *6 (S.D. Tex. 11, 2020), a case Hartford Insurance cites, the district court stayed the plaintiff's claims under the primary jurisdiction doctrine, but there is a key difference between the plaintiff's claims there and Hobson's claims. There, the district court reasoned that "[d]etermining the appropriate methodology to calculate the cash value of total loss vehicles is squarely within the regulatory authority delegated to the [Texas Department of Insurance]." *Id.* The plaintiff in *Mian* questioned the validity of the entire valuation methodology used. *See id.* at *5-6 ("Plaintiff alleges that the condition adjustment is 'statistically invalid[…,] that the base value calculated as part of the [valuation] report [was] also 'statistically invalid[]' and "Plaintiff brings this action individually and on behalf of all persons and entities that made first-party claims [] under an auto insurance policy [] whose vehicles were declared a total loss by Progressive and were valued using the WCTL [valuation methodology]."). Here, Hobson only questions the application of one adjustment, the PSA, not the valuation methodology itself. *See, e.g.*, Am. Compl. ¶ 29 (limiting the proposed Class to individuals who "received a first-party total loss valuation and payment on an automobile total loss claim that included a 'projected sold adjustment' or similar adjustment."). Unlike in *Mian*, Hobson is not asking the Court to prevent Hartford Insurance from using Mitchell's valuation methodology altogether, but simply that the Court determine whether Hobson's Vehicle was not valued according to the terms of the Policy.

The first factor of the primary jurisdiction test alone demonstrates that the Court is apt to decide this case because contract claims are within the conventional experience of judges and do not require agency expertise. The interpretation of an insurance policy is a question of law. *See*

14

*Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 674 (3d Cir. 2016). "Since insurance policies are considered contracts and contract interpretation is generally a question of law, we apply ordinary principles of contract law." *Transamerican Office Furniture v. Travelers Prop. & Cas.*, 222 F. Supp. 2d 689, 691 (E.D. Pa. 2002). Here, the issue to be decided is one of contractual interpretation: whether Hartford Insurance, in contravention of its contractual obligation to Hobson under the Policy, undervalued Hobson's Vehicle by applying a PSA in the ACV calculus.

Accordingly, a stay pending the DOBI's review of Hobson's claims is unnecessary.

## IV. CONCLUSION

For the reasons stated herein, Hartford Insurance's motion to dismiss is DENIED in part and GRANTED in part. Counts One, Three, and Four of Hobson's Amended Complaint are DISMISSED without prejudice. Hartford Insurance's request to stay this matter is DENIED. An accompanying Order will be entered.

Dated: September 28, 2022

_____
Hon. Evelyn Padin, U.S.D.J.